

**U.S. Department of Justice**

*United States Attorney*
*Organized Crime Drug Enforcement Task Force*

---

*Michael C. Hanlon*
*Assistant United States Attorney*
*Michael.Hanlon@usdoj.gov*
*Regional Director*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4895*
*MAIN: 410-209-4800*
*FAX: 410-962-9293*

January 12, 2018

William Buie, Esquire
David Williams, Esquire

    Re:    United States v. Tavon Jones
            Crim. No. ELH-17-0322

Dear Counsel:

        This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by January 29, 2018, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offenses of Conviction

        1.      The Defendant agrees to plead guilty to Counts One and Two of the Superseding Information in which he will be charged with Conspiracy to Distribute Narcotics, in violation of 21 U.S.C. § 846; and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 371. The Defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

### Elements of the Offense

        2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

        Count One

        That in or about January 2016 through June 2017, in the District of Maryland,

        (1) two or more persons entered the unlawful agreement charged in the Superseding Information to distribute 1 kilogram or more of heroin and 400 grams or more of fentanyl; and

        (2) the Defendant knowingly and willfully became a member of that conspiracy.

1

Count Two

That in or about January 2016 through June 2017, in the District of Maryland,

i. There existed an agreement between two or more persons to commit one or more substantive money laundering offenses in violation of 18 U.S.C. §§ 1956 and/or § 1957;

ii. The Defendant knew that the money laundering proceeds had been derived from an illegal activity;

iii. The Defendant knowingly and voluntarily became part of the conspiracy; and

iv. A member of the conspiracy committed an overt act in furtherance of the conspiracy.

### Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: Count One: Life imprisonment, with a mandatory minimum sentence of 10 years imprisonment, a $10,000,000 fine; and a period of supervised release of at least five and no more than five years; and Count Two: 5 years imprisonment, a $250,000 fine, and a period of supervised release of 3 years. In addition, the Defendant must pay $100 per count as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

2

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant

3

understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

> The base offense level is 38 because of the quantity of heroin and fentanyl involved in the offense, pursuant to U.S.S.G. § 2D1.1(c)(1). The offense level is increased by 4 levels because the Defendant was an organizer or leader of a criminal activity that involved 5 or more participants, pursuant to U.S.S.G. § 3B1.1(a). The adjusted offense level is 42.

> This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. In the event that the base offense level is 16 or greater, this Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. The adjusted offense level is 39.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

4

8. With respect to the calculation of the advisory guidelines range (with the exception of the agreements set forth in paragraphs 6 and 7), no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence based on the factors set forth in 18 U.S.C. § 3553(a).

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Forfeiture

11. The parties agree as follows:

a. The Defendant agrees to forfeit to the United States all of his right, title, and interest in any and all money, property, or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including but not limited to the following:

> One 2016 Honda Accord, MD Reg: 2CS4977 (VIN: 1HGCR3F93GA010070)
>
> 2015 Mercedes S63 AMG vehicle

b. The Defendant agrees to assist fully the United States in the forfeiture of the foregoing assets. The Defendant agrees to take all steps necessary to pass to the United States clear title to these assets, including but not limited to executing any and all documents necessary to transfer his interest in any of the above property to the United States, assisting in bringing any assets located outside the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that he will not assist a third party in asserting a claim to the foregoing assets in an ancillary proceeding.

c. The Defendant knowingly waives all constitutional, legal and equitable defenses to the forfeiture of the foregoing assets. It is further understood that, in the event that the United States files a civil action pursuant to 18 U.S.C. § 981 and/or 21 U.S.C. § 881 or any law enforcement agency initiates a forfeiture proceeding seeking to forfeit these assets, the Defendant will not file a claim with the Court or agency or otherwise contest such a forfeiture action and will not assist a third party in asserting any such claim. It

5

is further understood that the Defendant will not file or assist anyone in filing a petition for remission or mitigation with the Department of Justice concerning the forfeited assets.

d. The Defendant agrees to identify all other assets and identify the sources of income used to obtain all other assets, including identifying all assets derived from or acquired as a result of, or used to facilitate the commission of, any crime charged in the Indictment. The United States reserves the right to proceed against any remaining assets not identified in this agreement, including any property in which the Defendant has any interest or control.

## Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a) The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b) The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

   c) Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

   d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

13. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than

6

those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

14. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Stephen M. Schenning
Acting United States Attorney

By: _____
Michael C. Hanlon
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3-26-18
_____
Date

_____
Tavon Jones

I am Tavon Jones's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

3/26/18
3/26/18
_____
Date

_____
William Buie, Esquire
David Williams, Esquire

8

Attachment A

The United States would prove the following facts beyond a reasonable doubt at trial:

Narcotics Conspiracy

During 2016 and 2017, investigators with the Drug Enforcement Administration (DEA) and the Baltimore Police Department (BPD) conducted an investigation of drug-trafficking in the Baltimore, Maryland area and elsewhere. Tavon Jones was identified as a member of a drug distribution conspiracy whose members purchased narcotics from suppliers in Mexico, arranged for the importation of the narcotics into the United States, and distributed the narcotics in the Baltimore area. The evidence of Jones's membership and participation in the conspiracy included physical surveillance of his activities and the activities of his coconspirators; wiretaps during which Jones and his accomplices were monitored while planning and discussing drug transactions over cellular phones, including text message and voice calls; drug seizures from various locations; and other evidence. Jones admits that he did conspire and agree with other persons to distribute 1 kilogram or more of heroin and 400 grams or more of fentanyl, in Maryland and elsewhere. It was reasonably foreseeable to the Defendant that at least 36 kilograms of fentanyl (as well as quantities of heroin) would be or was distributed in furtherance of the conspiracy.

The wiretap and other evidence established that Jones arranged to have members of the conspiracy travel to Mexico on multiple occasions during the conspiracy. Jones had his co-conspirators travel to Mexico for the purpose of meeting with the Mexican suppliers and to test narcotics prior to purchase. Jones would communicate with his Mexican suppliers about obtaining drugs, and would arrange to have money delivered back to the Mexican suppliers in payment for the narcotics. During the wiretap, investigators intercepted Jones on his cellular phone making arrangements to sell quantities of narcotics to his own customers. Investigators conducted physical surveillance during which Jones would be seen meeting with his customers and/or arranging for drugs to be delivered to his customers. Jones also had other members of the conspiracy store drugs at various locations, including stash location residences maintained by associates of Jones and at storage units maintained by associates of Jones. Jones organized and led the activities within his organization because he determined and controlled the circumstances under which drugs would be received, how the drugs would be received, when members of the conspiracy would travel, and how and when drug transactions would occur. The conspiracy had more than five members, including Jones, his suppliers, couriers, persons who traveled for the conspiracy, persons who assisted in transactions, customer/distributors, and other persons.

On May 31, 2017, in Jessup, Maryland, investigators observed Tavon Jones meeting with another member of the conspiracy, hereinafter CC1, at a Burger King restaurant. CC1 had been identified as a member of the conspiracy who traveled to Mexico for the conspiracy, obtained drugs for the conspiracy, and stored drugs for the conspiracy. After that meeting, CC1 went to a nearby Quality Inn hotel parking lot. At the parking lot, CC1 interacted with two other males near a tractor trailer and CC1 took possession of two duffel bags from the tractor trailer. CC1 placed the duffel bags in his vehicle and left the hotel area. While CC1 was at the Quality Inn, Jones was

watching the activity on the parking lot in his own car. As CC1 left the area, Jones pulled directly behind CC1 and followed CC1. Maryland Transportation Authority Police, working with the DEA, conducted a traffic stop of CC1 for state traffic violations on the highway. CC1 was the driver of the vehicle and was alone in the vehicle. A trained police canine conducted a sniff test on CC1's vehicle and alerted for the presence of narcotics. Meanwhile, Jones was not initially stopped. Jones drove away in his car, and was arrested later that evening at a hotel.

Officers conducted a search of CC1's vehicle and observed the duffle bags in the car. Investigators searched the bags and found approximately 31 kilograms of fentanyl, a schedule II controlled substance, and 10 kilograms of heroin, a schedule I controlled substance (both substances were confirmed to be narcotics by lab analysis).

Jones admits that he jointly possessed the narcotics described herein, including the fentanyl and heroin found in the duffle bags in CC1's car, with CC1. Jones also agrees that CC1 took possession of those narcotics in furtherance of the conspiracy of which both Jones and CC1 were members, and that it was reasonably foreseeable to Jones and in furtherance of the conspiracy that CC1 would take possession of those drugs. Jones knew and intended that the drugs obtained by CC1 from the tractor would be distributed in furtherance of the conspiracy.

### Money Laundering Conspiracy Evidence

The aforementioned federal and state investigation also revealed that the drug-trafficking organization in this case, of which Jones was a member, also engaged in a conspiracy to commit money-laundering in furtherance of the narcotics activity. The organization paid money to its out-of-state suppliers for purchased fentanyl and heroin. The organization paid for those narcotics with the proceeds of its own narcotics sales. For example, during March 2017, investigators intercepted phone calls (over the wiretap) between Jones and an individual believed to be a money courier for the organization's suppliers. Calls between Jones and the individual indicated that Jones would be meeting the individual at a hotel. Investigators identified the hotel and observed surveillance video corresponding to Jones's visit at the hotel. The video showed Jones arrive at the hotel in question with a rolling suitcase. Investigators believe the rolling suitcase contained money being dropped by Jones for the courier.

On May 21 and May 22, 2017, investigators received information from the wiretaps that Jones would again be arranging to drop something off to the same money courier. The calls indicated that the item – which investigators believed to be money – would be given to the courier at a hotel in the Baltimore area. Agents set surveillance at the hotel. CC1 arrived at and entered the hotel while pulling a rolling blue/black duffel bag behind him. A short time later, CC1 left the hotel but did not have the bag. Video surveillance and records for the hotel confirmed that the courier (the same one seen in connection with the March 2017 hotel surveillance) was at the hotel during the timeframe of CC1's visit. Based on the calls between Jones and the courier prior to CC1 coming to the hotel, and CC1's activities at the hotel, investigators concluded that CC1 dropped off a quantity of money at the hotel.

Jones's agreements with his coconspirators included an agreement to transfer money to the suppliers in order to pay for drugs. Jones also agreed with those coconspirators to conduct financial transactions, including the payment of cash to drug suppliers and other transactions, in order to promote the carrying on of their ongoing conspiracy to distribute narcotics. The money used during those transactions constituted the proceeds of narcotics trafficking, and Jones and his coconspirators knew that the money used during those transactions constituted the proceeds of narcotics trafficking.

_____
Michael C. Hanlon
Assistant United States Attorney

I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

3-26-18
Date

_____
Tavon Jones

I am Tavon Jones's attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is a voluntary one.

3-26-18
3-26-18
Date

_____
William Buie, Esquire
David Williams, Esquire

11